## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANDIA EVANS,

       *Plaintiff*,

     v.

JOANN HOOD, et al.,

       *Defendants*.

Civil Action No. 1:19-cv-03346 (CJN)

## MEMORANDUM OPINION

Andia Evans bought a townhouse from JoAnn Hood in 2014.  Am. Compl. ¶¶ 12, 14, ECF No. 3.  Hood provided seller financing for the purchase.  *Id.* ¶ 14.  Five years later, as Evans faced an impending balloon payment and foreclosure, she brought this suit against Hood and several other people and entities involved in the transaction.  *See generally id.*  Defendants collectively move to dismiss or, in the alternative, for summary judgment.  *See, e.g.*, Defs. JoAnn Hood & JoAnn Hood Living Tr.'s Mot. to Dismiss Am. Compl., or in the Alt., Mot. for Summ. J., ECF No. 14.  The Court agrees that Evans's federal claims fail and therefore dismisses them, relinquishes supplemental jurisdiction over the remaining claims, and dismisses the case.

### I.     Background

Evans sought to purchase a home in 2014.[1]  Am. Compl. at 1.  Her income at that time was relatively low, *id.* ¶ 13, but she had recently inherited some assets that she intended to apply

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must, of course, accept well pleaded facts in the Complaint as true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court may also consider materials Evans attached to her Complaint without converting the Motions to Dismiss into Motions for Summary Judgment.  *English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013).

toward a down payment, *id.* ¶ 8.  Evans engaged Defendant Carolyn Wilson, a friend who worked as a realtor.  *Id.* ¶ 7.  Unbeknownst to Evans, however, Wilson was not licensed.  *Id.* Because Evans had poor credit, Wilson recommended that she pursue seller financing so as not to have to apply for a traditional loan from a financial institution.  *Id.* ¶ 9.  Wilson later brokered a deal between Evans and Hood.  *Id.* ¶¶ 10–12.  Hood agreed to sell Evans a townhouse in the Fort Lincoln neighborhood in Northeast Washington for $330,000.  *Id.* ¶ 12.  Under the deal's terms, Evans made a $100,000 down payment and Hood financed the remaining $230,000 over a five-year period with a balloon payment to occur at the term's end.  *Id.* ¶¶ 12, 14.  The sale closed in mid-to-late 2014.[2]  *Id.* ¶ 14.

Evans alleges that the HUD-1 Settlement Statement omitted any mention of a balloon payment (or even the amortization period, interest rate, or total amount of interest to be paid).  *Id.* ¶ 15; Pl.'s Settlement Statement ("HUD-1") at 3, ECF No. 3-1 at 6.  Moreover, Evans alleges that Wilson failed to disclose that she was not a licensed realtor and that Hood's husband, Defendant David Hood, was the realtor of record on the deal.  Am. Compl. ¶¶ 7, 18.  Several days after closing, David Hood and Wilson allegedly executed a "Settlement Extension Addendum" that modified the realtor's name on the paperwork to Stuart Reynolds, a licensed realtor for whom Wilson often worked.  *Id.* ¶¶ 17–19.  Evans alleges that her signature was forged on that addendum.  *Id.* ¶ 19.  JoAnn and David Hood recorded the Settlement Extension Addendum more than a year after closing.  *Id.* ¶ 20.

---

[2] Evans's Amended Complaint alleges that closing occurred on August 9, 2014, Am. Compl. ¶ 12, but the documentation she attached to the Complaint indicates that closing took place on October 15, 2014, *see* Pl.'s Settlement Statement (HUD-1), ECF No. 3-1 at 3–5.  The precise date does not affect the Court's analysis.

In July 2017, Evans tried to refinance to a traditional mortgage. *Id.* ¶ 21. At that point she discovered the Addendum, as well as the fact that JoAnn Hood was not a licensed loan originator and that Evans lacked critical documentation (a "Condominium Resale Package") without which she was unable to sell or refinance the property. *Id.* ¶ 22. There is no allegation that Hood has ever foreclosed, and Evans apparently still occupies the property. *Id.* at 1.

Evans filed this suit on November 6, 2019. *See generally* Compl., ECF No. 1. Her original Complaint contained only D.C.-law claims and expressly alleged that this Court had diversity jurisdiction. *Id.* ¶ 1. But the Complaint also alleged that both Evans and Defendant Wilson were District of Columbia residents, a fact that would have destroyed complete diversity among the Parties and thus precluded federal jurisdiction. *Id.* ¶ 2; *see also* 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. 267, 267–68 (1806). Perhaps detecting this flaw in her pleading, Evans then amended as of right before serving Defendants. *See generally* Am. Compl.; *see also* Fed. R. Civ. P. 15(a)(1)(A).

The Amended Complaint adds two federal counts and pleads federal-question jurisdiction under 28 U.S.C. § 1331. *See* Am. Compl. ¶¶ 1, 26–41.[3] It lodges claims against four separate Defendants: JoAnn Hood, David Hood, the JoAnn Hood Living Trust, and Carolyn Wilson. *Id.* ¶¶ 2–4. It contains eight counts: (I) a violation of federal Truth in Lending Act (TILA), 15 U.S.C. §§ 1639b, 1640, as to JoAnn Hood, Am. Compl. ¶¶ 26–37; (II) a violation of the federal Secure and Fair Enforcement (SAFE) Mortgage Licensing Act of 2008, 12 U.S.C. § 5103, as to JoAnn Hood and the Trust, Am. Compl. ¶¶ 38–41; and several counts under D.C. law alleging violations of the Mortgage Lender and Broker Act (MLBA), D.C. Code §§ 26-1113–14, and the

---

[3] Although alleging the existence of federal questions in the case, the Amended Complaint nevertheless retains the allegation that the amount in controversy exceeds $75,000—a point that has no bearing under 28 U.S.C. § 1331. Am. Compl. ¶ 1.

Consumer Protection Procedures Act (CPPA), D.C. Code § 28-3904, fraud, undue influence, and civil conspiracy, Am. Compl. ¶¶ 42–70. As to remedies, Evans seeks declaratory relief, rescission of the mortgage contract, compensatory and punitive damages, and fees. *Id.* at 16–17.

Defendants filed three separate Motions to Dismiss. David Hood argues that Evans's claims against him are barred by the statute of limitations and that Evans fails to state a claim. *See generally* Def. David Hood's Statement of P. & A. in Supp. of Def. David Hood's Mot. to Dismiss, or in the Alt., Mot. for Summ. J. ("David's Mot."), ECF No. 13-1. JoAnn Hood and the Trust (represented by separate counsel from her husband) make the same arguments as to the claims against them. *See generally* Def. JoAnn Hood and Def. JoAnn Hood Living Tr.'s Statement of P. & A. in Supp. of Defs.' Mot. to Dismiss Am. Compl. or in the Alt., Mot. for Summ. J. ("JoAnn's Mot."), ECF No. 14-1. Wilson, who, like Evans, is a D.C. resident, argues that the Court lacks subject matter jurisdiction over the claims against her individually because of the lack of diversity or a federal question and that the claims are time-barred. *See generally* Def. Wilson's Mot. to Dismiss ("Wilson's Mot."), ECF No. 15.

## II.     Legal Standards

### A.     Jurisdiction

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), Plaintiff bears the burden of establishing the Court's subject-matter jurisdiction. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). When evaluating a motion to dismiss under Rule 12(b)(1), the court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such

facts determine[s] jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139

(D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  Without

subject-matter jurisdiction over a claim, the Court must dismiss it.  *Arbaugh v. Y&H Corp.*, 546

U.S. 500, 506–07 (2006).

### B.      Failure to State a Claim

"A pleading that states a claim for relief must contain . . . a short and plain statement of

the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although the

Court accepts all well pleaded facts in the Amended Complaint as true, "[f]actual allegations

must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007).  "While a complaint . . . does not need detailed factual allegations, a

plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do."  *Id.* at 554–55 (internal quotations omitted).  The claim to relief must be "plausible on its

face," enough to "nudge[ the] claims across the line from conceivable to plausible."  *Id.* at 570.[4]

### III.     Analysis

### A.  Supplemental Jurisdiction Over Claims Against Wilson

Only three of the Amended Complaint's eight counts contain any claims against Carolyn

Wilson, who acted as Evans's real estate agent during the sale:  Count V (fraud), Count VI

(undue influence), and Count VII (civil conspiracy).  Am. Compl. ¶¶ 54–66.  All three are D.C.

common-law claims.  *Id.*  For the purposes of her Motion, Wilson concedes that she is a D.C

---

[4] Although two sets of Defendants moved either to dismiss under Rule 12(b) or, in the
alternative, for summary judgment under Rule 12(d) and Rule 56, *see generally* David's Mot.,
JoAnn's Mot., the Court does not reach the arguments for summary judgment.

resident as the Complaint alleges. *See* Am. Compl. at 1; Wilson's Mot. at 2–3. Evans is also a D.C. resident. Am. Compl. ¶ 2.

Wilson therefore argues that there is neither diversity between her and Evans nor a federal question as to the specific counts against *her*, so the Court lacks subject-matter jurisdiction as to her individually. *See* Wilson's Mot. at 2–4. This argument badly misapprehends the nature of federal-question jurisdiction under 28 U.S.C. § 1331. "Federal question jurisdiction . . . is independent of other statutory grants of jurisdiction to the district courts. Thus the citizenship of the parties, so critical to the invocation of diversity of citizenship jurisdiction, is irrelevant to federal question jurisdiction." 13D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3561 (3d ed. 2020) (citing *Duignan v. United States*, 274 U.S. 195, 197 (1927)) (other citations omitted).

Although Evans lodges no federal claims against Wilson herself, Evans naturally points to 28 U.S.C. § 1367, which permits the Court to exercise discretionary, supplemental jurisdiction over Evans's claims against Wilson so long as there is a federal question somewhere in the Complaint (there is) and the D.C.-law claims "involve common issues of proof and the same witnesses." Pl.'s Opp'n to Defs.' Mots. to Dismiss and Mots. for Summ. J. ("Opp'n") at 7–9, ECF No. 22 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966), *superseded by statute on other grounds as stated in Diven v. Amalgamated Transit Union Int'l and Local 689*, 38 F.3d 598, 600 (D.C. Cir. 1994)). Faced with Evans's response, Wilson seems to have abandoned the argument entirely—her Reply does not mention jurisdiction whatsoever. *See generally* Def. Wilson's Reply to Opp'n to Mot. to Dismiss, ECF No. 24. That's for good reason: the Court has supplemental jurisdiction over Evans's claims against Wilson under 28 U.S.C. § 1367.

### B.      Federal Claims

Having established that the Court has discretionary supplemental jurisdiction over

Evans's D.C.-law claims, the Court turns to the federal claims Evans added to her Amended

Complaint to overcome the absence of diversity.

### 1.      Truth in Lending Act Claim

Count I of the Amended Complaint alleges that JoAnn Hood violated the TILA by "(1)

inducing Plaintiff into the illegal, predatory loan and sale of the subject property, without

meeting the appropriate licensing requirements for a loan origination business; and (2) breaching

the duty of care required under" 15 U.S.C. § 1639b.  Am. Compl. ¶ 27.  "Congress enacted [the]

TILA in 1968 . . . to 'assure a meaningful disclosure of credit terms so that the consumer will be

able to compare more readily the various credit terms available to [her] and avoid the

uninformed use of credit.'"  *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 53–54 (2004)

(quoting 15 U.S.C. § 1601(a)).  "The Act requires a creditor to disclose information relating to

such things as finance charges, annual percentage rates of interest, and borrowers' rights, and it

prescribes civil liability for any creditor who fails to do so."  *Id.* at 54 (citing 15 U.S.C. § 1640)

(other citations omitted).

Hood argues that the TILA's statute of limitations bars this claim.  *See* JoAnn's Mot. at

10–11.  The Act provides for a three-year limitations period for claims alleging violations of

section 1639b.  *See* 15 U.S.C. § 1640(e).  Under the TILA, the "limitations period begins to run

when the borrower accepts the creditor's extension of credit."  *Grant v. Shapiro & Burson, LLP*,

871 F. Supp. 2d 462, 472 (D. Md. 2012) (citing *Wachtel v. West*, 476 F.2d 1062, 1065 (6th Cir.

1973)) (other citations omitted); *see also Johnson v. Long Beach Mortg. Loan Tr. 2001-4*, 451 F.

Supp. 2d 16, 39 (D.D.C. 2006) ("In closed-end consumer credit transactions . . . the limitations

period begins to run on the date of settlement." (citing *Postow v. OBA Fed. Sav. & Loan Ass'n*,

627 F.2d 1370, 1380 (D.C. Cir. 1980)) (other citations omitted).  Hood contends that settlement

occurred, at the latest, on October 15, 2014—the date Hood conveyed the property to Evans and

extended credit to her.  *See* HUD-1.  Because Evans filed her Complaint on December 6, 2019—

more than five years after settlement occurred—Hood argues that the statute of limitations bars

Evans's TILA claim on its face.  *See generally* Compl.; 15 U.S.C. § 1640(e).

To be sure, "courts should hesitate to dismiss a complaint on statute of limitations

grounds based solely on the face of the complaint."  Opp'n at 4 (quoting *Firestone v. Firestone*,

76 F.3d 1205, 1209 (D.C. Cir. 1996)).  But Evans's only defense to Hood's argument is that the

loan actually settled in 2019 at the time the balloon payment was due, not in 2014 when "the

loan was entered."  *Id.* at 13–14.  She cites no cases suggesting that a TILA claim accrues at the

time a loan's payoff is due—nor could she, as such a rule would prevent borrowers from suing

their creditors immediately after receiving faulty loan disclosures so long as they had any

remaining balance to pay.  Nor does Evans explain how the loan could have "settled" in 2019

when the document she claims contained faulty disclosures was entitled a "Settlement

Statement" and plainly states that the "Settlement Date" was October 15, 2014.  *See* HUD-1 at 1.

Finally, although other portions of Evans's brief contain generic references to the

possibility that a plaintiff's lack of notice of the violations may serve to toll the statute of

limitations, she cites no decision interpreting the TILA's limitations provision, nor does she

explain how any purported lack of notice applies to this claim.  *See Taylor v. Wells Fargo Bank,

N.A.*, 85 F. Supp. 3d 63, 75–76 (D.D.C. 2015) ("Plaintiff cites to no authority within the TILA

statute or case law supporting [his] vague tolling claim.").  Count I is time-barred on its face.

### 2.     SAFE Mortgage Licensing Act Claim

Count II alleges that JoAnn Hood and the Trust violated the SAFE Act because Hood

was not a licensed mortgage originator under D.C. law and yet "engage[d] in the business of a

loan originator." 12 U.S.C. § 5103(a).  Defendants point to the generic four-year statute of limitations for federal statutes and argue that the five-year delay here is fatal to the claim. JoAnn's Mot. at 11 (citing 28 U.S.C. § 1658).  Whether Evans reasonably could have discovered that Hood was not licensed at the time of closing is a question of fact not suitable for resolution on a Motion to Dismiss.

But the claim contains a more fundamental flaw that Defendants do not address:  the SAFE Act does not contain a private right of action.[5]  *See Murphy v. Bank of N.Y. Mellon*, No. 14-cv-02030, 2014 WL 4222188, at *6 (N.D. Cal. Aug. 25, 2014) (dismissing § 5103 claim for lack of private right).  In fact, the SAFE Act does not appear to contain any judicially enforceable provisions whatsoever.  By its own terms, the Act's purpose is to *encourage* "the States . . . to establish a Nationwide Mortgage Licensing System and Registry for the residential mortgage industry."  12 U.S.C. § 5101.  The Act instead entrusts enforcement to the Consumer Financial Protection Bureau, to which it grants authority to regulate loan origination licensing and impose monetary penalties for non-compliance.  *Id.* § 5113.

Evans does not argue that Congress implied a private cause of action when it passed the SAFE Act.  *See Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) ("Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." (internal quotation omitted)).  Evans does allege that "federal law requires a lender to comply with state law," Am Compl. ¶ 41, and does allege claims under the D.C. Mortgage Lender and Broker Act, *id.* ¶¶ 42–53, but "alleging a violation of a federal statute as an

---

[5] Although Defendants do not address the argument, the question of whether a federal cause of action exists is jurisdictional in nature.  *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 817 (1986) (quoting 28 U.S.C. § 1331).  Courts have an independent duty to assess whether jurisdiction exists, and Defendants cannot waive the issue by failing to address it.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'"  *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 817 (1986) (quoting 28 U.S.C. § 1331).  The Court therefore lacks federal-question jurisdiction over Count II.

### C.   Supplemental Jurisdiction Over D.C.-law Claims

Evans's original suit was premised entirely upon allegations of violations of D.C. law. *See generally* Compl.  It appears that when she discovered that her Complaint failed to allege facts that would permit this Court to exercise jurisdiction, she hastily added federal claims with little chance of success in a last-ditch effort to manufacture federal jurisdiction.  Evans should have filed this case in the District of Columbia's courts at the outset, as those courts are best suited to resolve disputes over a D.C. contract regarding a D.C. residential property.  Having dismissed the federal claims as barred by the statute of limitations and failing to raise an actionable federal question, the Court therefore declines to exercise supplemental jurisdiction over the remaining D.C-law claims. 28 U.S.C. § 1367(c).

### IV.   Conclusion

Evans may have colorable claims against Hood and the other Defendants, but she has not asserted a valid federal claim within the allowed period of time.  The Court therefore dismisses the federal claims and relinquishes jurisdiction over the D.C.-law claims to permit Evans to press her case in the D.C. Superior Court.  An Order will be issued contemporaneously with this Memorandum Opinion.

DATE:  July 2, 2020

_____
CARL J. NICHOLS
United States District Judge